Good morning, your honors. May it please the court. Dave Lieberman for the United States. I'd like to reserve two minutes for rebuttal. In this case, Mr. Cathcart molested the minor victim, demonstrated a pedophilic attraction to her, and admitted similar behavior in the past. The question for the panel is whether that conduct, when considered alongside the other facts collected during the investigation, demonstrated a probable cause for the search of Mr. Cathcart's computers. The state court judge reasonably answered that question yes. The district court's contrary determination was error, and this court should reverse. I'd like to focus on two particular facts in the affidavit that, in the government's view, reasonably link Mr. Cathcart's pedophilic interests to his computer use. Fact number one, after Mr. Cathcart posts bail, he contacts his spouse and requests return of his personal computers and hard drives, and further requests that the spouse turn on the home computer tower so he could access it remotely. Considering the sequence in which that occurred, the state court judge could reasonably conclude that Mr. Cathcart was trying to access and possibly hide or delete incriminating files. What could he have done working remotely? Could he have eliminated files remotely? So the affidavit does not go into that detail. It does say that Mr. Cathcart is sophisticated in IT, and this is a fairly extensive computer tower, but it doesn't go into further detail. This was not a work-issued computer, is that correct? Correct, according to the affidavit. Did his wife use it? The affidavit doesn't go into great detail. Facts developed subsequent to the affidavit reported that the wife did not extensively use it. Do we know also whether he sometimes used the home computer for work and his IT work? That is not in the record anywhere. The difficulty, before we move on to the good faith, is this Perkins case. Now, I realize that Perkins was issued after the warrant in this case, but the upshot of Perkins is that basically when you have child molestation, that very weak evidence can't tip you into probable cause, and there they actually had nude pictures of some underage girls found on the computer. We don't really have anything like that in Mr. Cathcart's case, do we? So we don't have any photos that he was possessing. As I understand, Perkins, the panel held that the suspect there was possessing two non-pornographic selfies of two adolescents with the head, with just the heads, if I've used that terminology correctly. Then that, the panel said, was not sufficiently connected to pornography possession. But this goes to the second fact that I wanted to reference on the probable cause. After the spouse calls the detective, the detective comes to the home, and the detective sees five very large external hard drives with opaque handwritten labels, Photos A, Photos B, DC0, DC1. And the labels, particularly Photos A, Photos B, don't have any obvious apparent connection to Mr. Cathcart's work as an IT service contractor. And they also didn't have any apparent connection to the family, because immediately upon seeing those with the detective, the wife states, we don't take that many photographs. And so line up the sequencing in which this occurs, that Mr. Cathcart gets out of prison or jail, he immediately requests remote access, hard drives, personal computers, shortly after being questioned about child pornography use. And then the detective going to the home and seeing the hard drives, similar hard drives that Mr. Cathcart had requested with these opaque handwritten labels. I mean, that almost says it all. Those labels don't say anything, do they? Well, the- I mean, if you have a Photo A and Photo B, even if you take a few photos, it just seems to me that's a fairly attenuated fact to try to jump to the conclusion, well, maybe behind Wall A or Wall B, he has pornographic material. Two responses, Your Honor. In the affidavit, the officer says, based on his training and experience, that those types of opaque notations are commonly used with contraband because it allows the user to immediately know what's on it, but not reveal the context to anybody close by, in this case, including the spouse. So line up, and of course, the magistrate, the state magistrate is entitled to rely on such statements about the officer's training and experience. So line up those facts, Mr. Cathcart being questioned in jail about child pornography. He denies it. He gets out, wants to collect all of his IT devices, gain remote access. The detective sees opaque labels. And that provides a fair basis for the state court judge, in this case, to find probable cause. Now, there are other facts in the affidavit that, when read in their isolation, could be completely innocuous. The phone next on the nightstand during the molestation. Mr. Cathcart's conditional denial when the spouse asks, do we have any of these materials on our computers? And he says, there shouldn't be. The habit of using the laptop in the bathroom. It may be completely innocuous in their own right, but line them up. And oftentimes, the Supreme Court says that the whole picture is greater than the sum of its parts. And the state judge here reasonably found probable cause. And this court gives that determination, quote, great deference. But even if this court disagrees on that point, I'd like to shift my focus to good faith. The affidavit here looked nothing like the two bare bones affidavits referenced in the Daughtry case and the Needham case. Those affidavits had two facts. The suspect committed a molestation against a minor, and the officer, based on training and experience, concluded that people who molest children carry child pornography. Here, we have a 13-page affidavit, and the fact that we're here this morning debating the inculpatory significance of trying to get back those personal computers and those external hard drives and these opaque labels, that demonstrates that the officers here on the ground reasonably relied on the state court judges' probable cause determination. And that makes this warrant completely unlike the warrants that this court found insufficient in Daughtry and Needham. So even if the court disagrees, even if the court agrees with the district court's no probable cause finding, suppression was unwarranted under the good faith exception. Unless the panel has any additional questions, I would like to reserve the balance of my time for rebuttal. You may. Thank you. Good morning, Your Honors. May it please the court. Jeremy Sporn, Federal Defenders in Yakima, on behalf of Mr. Cathcart the Appellee. I think the critical question here is, do the additional facts in the affidavit, do they actually go to probable cause? Are they actually meaningful in the totality of circumstances?  just these extra things to justify the fact that the court has not found by a fishing expedition and an unreasonable search. And I think the point goes more to substance than to form. It's not just, can you come up with something? Can you come up with anything beyond evidence of molestation? But it's supposed to be, can you come up with something reasonably solid and reasonably probative? What if the hard drives have been labeled 2018 family reunion, and the wife had said, we didn't have a family reunion? I don't think that would get the government to probable cause. It might be a little bit more suspicious if his wife had specifically debunked an assertion on the labels. But the fact that they're labeled photos, photos A, photos B, I don't think has any real significance in the totality of circumstances. I've never heard of a person secreting child pornography on a hard drive and then labeling it photos. I think that's not what the appellate court and these people do. I think specifically in this situation where the- Was anything actually found on those hard drives? No, it wasn't. I think specifically where the government and where law enforcement is alleging that Mr. Cathcart has this technological aptitude to not only hide images, but to potentially destroy them, that it's giving him that credit. And then on the other hand, it's saying, well, but he might resort to this incredibly almost primitive method of hiding child pornography on a hard drive and then taking the steps to label it photos. I've never heard of anything like that. I don't think the court should give it a whole lot of credence here. He had a number of conversations with his wife, didn't he? He did, yes. Post-arrest and post-molestation of the daughter, correct? Correct. And he seemed really interested in his computers and et cetera. He wanted access to his computers and Mr. Cathcart worked in computers. He worked maintaining data centers and he worked remotely. So I think it's perfectly natural that he would request access to all of his devices to enable him to work while he's awaiting trial or dealing with the case. In one of those conversations, did he talk about having some laundry done? He did. He asked his wife to, I think, wash some clothes that were laying about. And she responds, if you mean the clothes that you were wearing when I found you, they've been turned over for evidence or something like that. And he says, no, no, no. I just mean clothes to wear if I get out of jail. I think that's the more credible inference that the court should draw as to all these calls, not just laundry, but with respect to electronic devices. And as one of your honors stated when Mr. Lieberman was arguing, there's no evidence in the record that he didn't use his home device, his home computer tower for work purposes. There was nothing to distinguish it necessarily from his work device. And I think more importantly- Well, but although that certainly could be a different factor if we had evidence on that, there's no evidence, but there is evidence that he had a work computer, correct? There's evidence that he had a work computer. I think the more important point is that there's no evidence that he called for access to that home tower in order to potentially destroy evidence relating to child pornography possession. I think that's a sort of a leap of faith or a strained inference that isn't warranted either individually or in the totality of circumstances. Again, the totality of circumstances is not this magical phrase that the government can invoke and cause us to just abandon all scrutiny of what those circumstances are. I said in the brief that all of nothing is still nothing. And I think that's really what distinguishes this case from a case like United States versus RV Zoo, the Supreme Court case, where law enforcement takes a look at a suspect vehicle and it comes up with seven different indicia or observed facts that taken together in their totality point reasonably towards the type of activity that law enforcement is suspecting there, drug smuggling or alien smuggling in that case. The pieces fit together and they fit this pattern. They don't fit in the same way here. I don't think they fit in all. And I don't think the inference can be drawn that Mr. Cathcart took his laptop into the bathroom to look at child pornography there or was calling his wife to request access to files so that he could destroy when it hasn't been established in the slightest that there was anything to destroy in the first place. All of it is just really an empty guess. And when we look at the nexus section in the affidavit, it's all this sort of conditional relevance theory. This fact could mean this, and then that fact could mean that. If Mr. Cathcart was looking at child pornography, then his calls might support the theory that he was trying to destroy evidence. I don't think that gets us to probable cause, and I don't think it gets us into good faith territory either. It's just this sort of wild theorizing with really no basis in fact. And I wanna read the court a quote from a case called the United States versus Falso, a second circuit case, because they rejected precisely this type of conditionally probative nexus evidence. They said, although Falso might hoard images of child pornography if he viewed and downloaded them, there's no allegation in the affidavit he was in a position or otherwise inclined to do so. And all of what the government argues here is the same sort of flawed syllogistic logic where it's supposed to be the other way around. It's supposed to be facts driving and pointing towards the ultimate conclusion that there was probable cause. In the other cases that we cite in our brief. Counselor, your time is running down. Would you mind going to the good faith? Certainly. I think the government's argument is contrary both to Daugherty, the 2010 case, and the Needham, United States versus Needham, the 2013 case. Both cases envision situations where the nexus between molestation and child pornography is not enough by itself to get into good faith. Yeah, if the officers were to have read Needham and Daugherty on the morning that they provided that affidavit, would they have known that the affidavit was absolutely worthless? I think they should have, yes. What sections of those cases would have told them that this was a futile exercise? Well, I think one particular portion of Needham strikes me as probative and the government failed to highlight it. It's that they presented evident, the officer in Needham presented evidence that Needham not just had been accused of molestation, but that in the past he had been charged with possessing obscene matter in connection with being arrested for some sort of sexual contact with minors. So there, I think we have something well beyond what we have in Mr. Cathcart's case. We have a defendant accused not just of molestation. Yeah, but that fact is just so different from anything in this case. How would they know that they couldn't link up the other things that they had described? The fact of the photos and the wife's comments and the fact of the work computer different or the home computer different from the, those aren't found in Needham. Those are very different facts. How would they know that this was not good faith? They are different facts, I agree with that. But I think looking at the affidavit and the nexus section in particular, all of the conditional logic, all of the syllogisms that I, or some of them that I tried to highlight to the court previously, if A, then B, I think they would know that that's not the sort of- You know, here in Needham, what they say at the end is the only evidence linking the attempted child molestation to the possession was the experience of the officer. Here, the officer starts out with his experience, but then he goes on to detail all these very computer specific facts that relate to Mr. Cathcart. So I'm, I don't know why, if you read Needham, you'd say, okay, I can't just use my experience, that's not enough. But are there other indicia? And he then goes on to state what they are, and then the warrant gets issued. Why isn't that good faith? Because I don't think the fact that the officer can articulate something means that that something entitles him to the protection of the good faith exception. In any investigation, an officer can come up with a number of different facts. They may or may not be probative in the context of the investigation. But the fact that he came up with those things, I don't think go to probable cause. And when you- I don't know that he came up with them. The fact is that we have a sophisticated computer operator here. You don't have that in many cases. You may not have that in other cases, but in other cases, you do have greater evidence that the defendant was using a computer or using the internet in connection with a sexual interest in children in connection with molestation or in connection with seeking out child pornography. We see that in Weber, the Ninth Circuit case from a number of years ago. We see that in a Fourth Circuit case called Doyle, an Eighth or Sixth Circuit case called Hodson. And we don't have that here at all.  to child pornography except in the officer's imagination and in this nexus section that he provides. I see that my time appears to be up and with no further questions, I thank the court. Thank you. You have some time for a rebuttal. May please the court, two brief points. First on totality, this court and the Supreme Court has said, we have to look at the whole picture, not individual facts. That whole picture includes the initial molestation and crime in this case, Mr. Cathcart's repeated expressed interest in his computers while in jail, his effort to gain or possess his computers and gain remote access upon leaving jail on bond. And the fact that the detective goes to the house, sees the hard drives that Mr. Cathcart is looking for and sees opaque handwritten labels on there. Giving great deference to the state judge's determination, probable cause here exists. Turning to good faith, this affidavit did not violate the central tenets of Doordi Needham, which is affective molestation, plus the officer's training and experience that folks who commit these crimes possess child pornography. That's the holding of those two cases. We have additional facts in this case that make the officer's reliance on the state court judge's determination reasonable. In fact, that is exactly the second holding of the Fauso case, which opposing counsel referenced. There, pin site page 128, there may have been innocent explanations for Mr. Fauso's conduct, but the second circuit in that case held that those innocent explanations did not undermine the officer's good faith reliance on the warrant. That is this case. So under either route, suppression was unwarranted and this court should reverse the district court's suppression order. Unless there are any further questions, I thank the panel. Thank you. Thank you, and thank you both for your argument this morning. United States versus Cathcart is.
judges: Hawkins, McKeown, Bybee